**TRAFFIC JAM & SNUG, INC., Dylan Enterprises, Inc., and Ben Edwards, Plaintiffs,**

v.

**MICHIGAN LIQUOR CONTROL COMMISSION, and the State of Michigan, Defendants.**

**Civ. A. No. 88–CV–74999–DT.**

United States District Court, E.D. Michigan, S.D.

June 28, 1989.

Thomas M. Burns, Jr., Grosse Pointe Park, Mich., for plaintiffs.

Thomas J. Giachino, Lincoln Park, Mich., for defendants.

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DISMISSING COUNT I

DUGGAN, District Judge.

Plaintiffs Traffic Jam & Snug, Inc. ("Traffic Jam"), Dylan Enterprises, Inc. ("Dylan"), and Ben Edwards (the sole shareholder of plaintiffs Traffic Jam and Dylan), brought this action against the State of Michigan and the Michigan Liquor Control Commission, challenging certain provisions of the Michigan Liquor Control Act.

Plaintiff Traffic Jam is a Michigan corporation licensed by the Michigan Liquor Control with Class C and SDM liquor licenses, and operates a restaurant located in Detroit. Plaintiff Dylan owns the restaurant premises and leases them to Traffic Jam.

On September 16, 1988, plaintiff Edwards sought authorization from defendant Michigan Liquor Control Commission to add a brewery to the premises of the Traffic Jam restaurant. Edwards wishes to sell the beer produced to Traffic Jam patrons for consumption on and off the premises. The Michigan Liquor Control Commission ruled that M.C.L.A. § 436.31 prohibited Edwards and his corporations from possessing both a brewer's license and a Class C retail license.

Edwards, having exhausted his administrative remedies, brought this suit, asking the Court to restrain the defendants from enforcing M.C.L.A. § 436.31, on the ground that it is an illegal restraint of trade in violation of the Sherman Anti–Trust Act (Count I).[1]

---

1. Plaintiff also alleged a violation of the four-     teenth amendment equal protection clause

Defendants filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6), for failure to state a cause of action. Plaintiff filed a motion under Fed.R.Civ.P. 12(c), for partial judgment on the pleadings. The Court heard oral arguments on the motions on April 27, 1989, and issued a bench opinion granting defendants' Motion to Dismiss Count I, and denying plaintiffs' Motion for Partial Judgment on the Pleadings. An Order consistent with the Court's ruling was entered on May 15, 1989. Currently, plaintiffs have filed a Motion for Reconsideration of that order.

Under Local Court Rule 17(m)(3), a motion for reconsideration will be granted only if the movant demonstrates the existence of a palpable defect by which the Court and the parties were misled, and demonstrates that a correction of the defect will result in a different disposition of the case.

M.C.L.A. § 436.31, which the plaintiffs challenge, establishes a three-tier system of alcohol distribution. For the beer industry, the three-tiers are: (1) manufacturers (including brewers and suppliers), (2) wholesalers, and (3) retailers. Under this statute, the holder of a Class C liquor license, such as plaintiffs, cannot hold an interest in a brewer's license.

The Court granted defendants' Motion to Dismiss plaintiffs' claim under the Sherman Act, concluding that the Michigan Liquor Control Commission's action in denying plaintiff a brewer's license pursuant to M.C.L.A. § 436.31, constituted "pure state action." In *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the U.S. Supreme Court held that anticompetitive actions taken by states are not subject to anti-trust laws.

> The Sherman Act makes no mention of the state as such, and gives no hint that it was intended to restrain state action or official action directed by a state. The Act is applicable to "persons" including corporations, § 7, 15 U.S.C.A., and it au-

thorizes suits under it by persons and corporations. § 15.

> \* \* \* \* \* \*

> There is no suggestion of a purpose to restrain state action in the Act's legislative history. That its purpose was to suppress combinations to restrain competition and attempts to monopolize by individuals and corporations, abundantly appears from its legislative history.

> True, a state does not give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful; and we have no question of the state or its municipality becoming a participant in a private agreement or combination by others for restraint of trade.

*Parker* at 351–52; 63 S.Ct. at 313–14. (Citations omitted.)

The "state action" doctrine described in *Parker* was explained further in *Hoover v. Ronwin*, 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984):

> Thus, under the Court's rationale in *Parker*, when a state legislature adopts legislation, its actions constitute those of the State, see *id.*, at 351, 63 S.Ct., at 313, and *ipso facto* are exempt from the operation of the antitrust laws.

> In the years since the decision in *Parker*, the Court has had occasion in several cases to determine the scope of the state-action doctrine. It has never departed, however, from *Parker's* basic reasoning.

*Hoover* at 567–69; 104 S.Ct. at 1995.

The *Hoover* court noted that a stricter inquiry is necessary when the activity in question is not that of the legislature or supreme court, directly, but is activity carried out by others, under state authorization. In cases involving "hybrid" anticompetitive actions by a nonsovereign state representative, there must be a showing that the conduct is pursuant to a "clearly articulated" state policy, which the state "actively supervises", to escape the stric-

---

(Count II), and sought a declaratory judgment that M.C.L.A. § 436.31 allows a Class C licensee to own a brewery as a wholly owned subsidiary

(Count III). The parties stipulated to the dismissal of Counts II and III.

tures of the anti-trust laws. *Hoover* at 567–69, 104 S.Ct. at 1995.

In their Motion for Reconsideration, plaintiffs contend that the Court's decision is inconsistent with the U.S. Supreme Court's decision in *324 Liquor v. Duffy*, 479 U.S. 335, 107 S.Ct. 720, 93 L.Ed.2d 667 (1987). Plaintiffs also ask the Court to re-examine its determination that the denial of a brewer's license to plaintiffs is "pure state action", not a "hybrid" action, and thus whether the "clearly articulated" and "actively supervises" tests apply.

### I. *324 Liquor v. Duffy*

Plaintiffs argue that the facts of *324 Liquor* are similar to the facts of the present case, and that, under the holding in *324 Liquor*, this Court should find that the conduct of the Michigan Liquor Control Commission in denying plaintiffs a brewer's license is "hybrid" state action.

The plaintiffs' reliance on *324 Liquor* is misplaced. In that case, New York state law required liquor wholesalers to file or "post" monthly price schedules, for retailers, by bottle and by case. The posted case price was not required to bear any relation to the posted bottle price. New York liquor retailers were prohibited from selling below "cost", defined as the posted wholesale bottle price at the time the retailer sells the bottle, plus twelve percent. The New York pricing system thus allowed wholesalers (private actors) to set retail prices and retail mark-ups, without regard to actual retail costs.

The plaintiff in *324 Liquor* challenged a ten-day suspension of the plaintiff's liquor license, for selling two bottles of liquor at less than 112% of the posted wholesale bottle price. The U.S. Supreme Court held that the state's pricing system constituted a *per se* violation of § 1 of the Sherman Act. The Court further determined that the conduct (i.e., industry-wide retail price fixing) in *324 Liquor*, although directed by the state, was not "pure state action". Thus, the Court analyzed the conduct under the two-part *Hoover* test, and found that the "clearly articulated" and "actively supervises" tests were not met. There-

fore, the New York statute was inconsistent with the Sherman Act. "The national policy in favor of competition cannot be thwarted by casting such a gauzy cloak of state involvement over what is essentially a private price-fixing arrangement." *324 Liquor Corp. v. Duffy*, 107 S.Ct. 720 at 726, *quoting California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 106, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980).

The present case is distinguishable from *324 Liquor* because there is no private action in the alleged anticompetitive action involved here. The state legislature adopted the "tied-house" statute. The Michigan Liquor Control Commission, a sovereign state agency, assists in enforcing the statute. By no stretch of the imagination is there any private action involved.

By contrast, in *324 Liquor*, the state simply compelled retailers to charge at least 112% of the wholesale bottle price. The wholesalers, themselves, manipulated the wholesale bottle price to retailers, without regard to retail costs, and thus engaged in the anticompetitive activity (price fixing). The wholesalers in *324 Liquor* were private actors.

In consequence, plaintiffs have failed to allege a palpable defect, and plaintiffs' Motion for Reconsideration cannot be granted on this basis.

### II. *"Hybrid" Action*

Next, plaintiffs assert that the Court misconstrued the analysis required in a challenge of state liquor laws under the Sherman Act. In particular, plaintiffs contend that the analysis of whether a restraint is a "hybrid" is done only to determine if the "concert of action" requirement of § 1 is present. *Then*, plaintiffs assert, "[i]f it is determined that the challenged restraint is a hybrid, and that the challenged restraint is otherwise inconsistent with § 1," the Court must determine whether the state action doctrine applies. (Plaintiff's Motion for Reconsideration— page 4).

In this Court's opinion, the initial inquiry in analyzing state regulation of the liquor industry under the Sherman Act is whether the state's system is inconsistent with the anti-trust laws. *324 Liquor* at 724. This inquiry, however, is only to determine whether the activity involved violates § 1 of the Sherman Act, without regard to the source of the activity. If the activity involved does not violate § 1 of the Sherman Act, there is no need to determine whether the activity involved is "pure state action" or "hybrid action". In this case, defendants have not asserted the defense that the statute in question does *not* involve a violation of § 1 of the Sherman Act. Thus, the Court must determine whether the action involved is "pure state action" or "hybrid action". If the Court determines that the activity is a "hybrid action" then the Court must apply the two-prong "clearly articulated" and "actively supervises" test to determine whether immunity from the anti-trust laws is available. *Patrick v. Burget*, 486 U.S. 94, 108 S.Ct. 1658, 1663, 100 L.Ed.2d 83 (1988).

In the present case, the Court determined that the adoption of the "tied-house" statute by the state legislature, and its enforcement by the Michigan Liquor Control Commission (in denying plaintiffs a brewer's license) constituted "pure state action", subject to immunity. Because no private action is involved, it is unnecessary to apply the two-prong test outlined in *Hoover* and *Patrick*.

In *Hoover*, the Court said "[w]e find nothing in the language of the Sherman Act or its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." *Hoover* 104 S.Ct. at 1995.

Later in the same opinion, the Court stated:

> Closer analysis is required when the activity at issue is not directly that of the legislature or the supreme court but is carried out by others pursuant to state authorization. [Citations omitted]. In such cases it becomes important to insure that the anticompetitive conduct of the State's representative was contem-

plated by the State [citations omitted]. If the replacing of entirely free competition with some form of regulation or restraint was not authorized or approved by the State, then the rationale of *Parker* is inapposite. *Ibid.*

Here, it is clear that the "State" authorized and approved the "replacing of entirely free competition with some form of regulation or restraint".

Plaintiff contends that the action of the Michigan Liquor Control Commission is action of the executive branch and that the actions of the executive branch have not explicitly been determined to be "state action" (*Hoover*, 104 S.Ct. at 1995 n. 17). Even if this Court were to accept plaintiff's argument that the action of the Michigan Liquor Control Commission is not "pure state action" and is therefore a "hybrid action" subject to the "clearly articulated" and "actively supervises" tests, plaintiff fares no better. The legislative policy is "clearly articulated". And the action of the Michigan Liquor Control Commission in denying plaintiff's request is "actively" supervised. The Michigan Liquor Control Commission is simply following the standard set by and mandated by the legislature. There is no opportunity for the "state's representative," as the plaintiff classifies the Michigan Liquor Control Commission, to engage in conduct comparable to the conduct attributed to the "private actors" in *324 Liquor*. The Supreme Court in *324 Liquor* made it clear that a "hybrid" restraint may be attacked where "private actors are ... granted a degree of private regulatory power...." *324 Liquor*, 107 S.Ct. at 728 n. 8.

> "Our decisions reflect the principle that the federal antitrust laws preempt state laws authorizing or compelling *private parties* to engage in anticompetitive behavior."

*Ibid.* (Emphasis supplied).

The Supreme Court in *324 Liquor* acknowledged that "[s]ome States completely control the distribution of liquor within their boundaries" *324 Liquor* at n. 6, and that such "comprehensive regulation is immune under *Parker v. Brown* because the

State substitutes its own power for 'unfettered business freedom' ". *Ibid.*

In sum, the Court concludes that the activity of the Michigan Liquor Control Commission in denying plaintiffs a brewer's license is an exercise of control of the distribution of liquor within the state which is expressly permitted by *324 Liquor* and constitutes "pure state action". Therefore, the Court need not even apply the "hybrid" analysis which is required only when private actors are involved. Even if a "hybrid" analysis were applied, the "clearly articulated" and "actively supervises" test supports immunity.

Therefore plaintiffs have failed to demonstrate, to the Court, the existence of a palpable error by which the Court or the parties were misled, and the correction of which would result in a different disposition of the case. Plaintiffs' Motion for Reconsideration must be denied.

Now therefore,

IT IS ORDERED that plaintiffs' Motion for Reconsideration is DENIED.

IT IS FURTHER ORDERED that this order shall be a final disposition of the instant case, and shall constitute a final order.